UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSANA PEREZ,               ) | |
|                             ) | |
|           Plaintiff,        ) | Case  No. CV04-03040 AJW |
|                             ) | |
|      v.                     ) | MEMORANDUM OF DECISION |
|                             ) | |
| JO ANNE B. BARNHART         ) | |
| Commissioner of the Social  ) | |
| Security Administration,    ) | |
|                             ) | |
|           Defendant.        ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications disability insurance benefits and supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her benefits applications on May 2, 2002. [JS 2-3].  After her applications were denied initially and on reconsideration, an administrative hearing was conducted on February 26, 2003 before Administrative Law Judge Peggy Zirlin (the "ALJ"). [JS 2-3].  During the hearing, plaintiff was represented by a non-attorney, Joe Solomon, M.S.W. [Administrative Record ("AR") 34, 224-226].  Plaintiff testified on her own behalf with the assistance of a

1 Spanish-language interpreter. A vocational expert also testified. [AR 224-254].

2 In a written decision dated July 15, 2003, the ALJ found that plaintiff had "a severe left frozen shoulder (untreated) and lumbar spine disc disease," but that her impairments did not meet or equal a listed impairment. [AR 23]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work with no climbing and only occasional balancing, kneeling, crouching, crawling, stooping, and reaching with the upper left extremity. The ALJ determined that plaintiff's RFC did not preclude her from performing her past relevant work as an independent sales person. [AR 23]. The Appeals Council denied review of the ALJ's decision denying benefits. [AR 9-12].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Vocational expert's testimony regarding past relevant work**

Plaintiff contends that the ALJ erred in finding that plaintiff can do her past relevant work because the ALJ misrepresented the vocational expert's testimony in her decision and

failed to include all of plaintiff's impairments in her hypothetical question to the vocational expert. [JS 8].

A claimant is "not disabled" if she retains the RFC to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2; see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the Dictionary of Occupational Titles ("DOT") or the testimony of a vocational specialist may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798.

The ALJ found that plaintiff was restricted to "light work with no climbing, occasional balancing, kneeling, crouching, crawling, and stooping, and occasional reaching with the left upper extremity." [AR 21, 23]. In her decision, the ALJ stated that the vocational expert testified

> that such a hypothetical individual could do the claimants past work as an independent sales person, demonstrator, DOT 297.354.010, a light exertion, semiskilled SVP 3 job, as customarily performed. He testified that this job did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling.

[AR 22]. Citing the vocational expert's testimony, the ALJ concluded that plaintiff's RFC did not preclude her from performing her past relevant work as an independent sales person or "demonstrator," the title of the DOT job that the vocational expert testified described plaintiff's independent sales job, as that job customarily is performed. [AR 23, 246].

Plaintiff contends that the ALJ misrepresented the vocational expert's testimony because the vocational expert did not testify that the DOT job of demonstrator required occasional climbing, balancing, stooping, kneeling, crouching or crawling. While it is true that the vocational expert did not explicitly so testify, he did so implicitly when he identified the DOT

3

1   job of demonstrator and testified that the hypothetical individual described by the ALJ could
2   perform that job. The <u>DOT</u> job classification for demonstrator, job number 297.354-010,
3   includes a section entitled "Physical Demands" which states that the job does not require
4   climbing, balancing, stooping, kneeling, crouching or crawling. U.S. Dep't of Labor, <u>Dictionary</u>
5   <u>of Occupational Titles</u> (4th ed. rev. 1991)(Westlaw, "DICOT" database, 297.354-010
6   demonstrator)[1]. [<u>See</u> JS 57]. Thus, the ALJ did not err in finding that a person who could
7   tolerate those activities only occasionally would not be precluded from performing the job of
8   demonstrator as customarily performed.

9   The <u>DOT</u> also states that frequent reaching is required to perform the job of
10  demonstrator. Reaching means "extending the hands and arms in any direction." SSR 85-15,
11  1985 WL 56857, at *7. The Commissioner's policy guidelines acknowledge that "[v]arying
12  degrees of limitations" in reaching "would have different effects, and the assistance of a VS may
13  be needed to determine the effects of the limitations." SSR 85-15, 1985 WL 56857, at *7. The
14  ALJ found that plaintiff was restricted to reaching occasionally with her left upper extremity.
15  [AR 21, 230]. The vocational expert testified that such a limitation would not preclude
16  performance of the <u>DOT</u> job of demonstrator. [AR 21, 23]. That testimony provides the type
17  of clarification about the effects of a particular limitation in reaching that is expressly
18  contemplated by SSR 85-15. <u>Cf.</u> <u>Maier v. Commissioner of the Social Sec. Admin.</u>, 154 F.3d

---

[1] Even if that information appeared only in the <u>Selected Characteristics of</u> <u>Occupations Defined in the Revised Dictionary of Occupational Titles</u> ("<u>SCO</u>"), as plaintiff contends, the <u>SCO</u> is a "companion publication" to the <u>DOT</u>, and the vocational expert's citation to the <u>DOT</u> job classification would be sufficient to incorporate by reference any supplemental information about a <u>DOT</u> job that appears in the <u>SCO</u>. See 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."); SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy. We use these publications at steps 4 and 5 of the sequential evaluation process.").

913, 915 (9th Cir. 1998)(per curiam)(holding that the ALJ "properly relied on expert testimony 'matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant' in deviating from the Dictionary of Occupational Titles descriptions") (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Therefore, the ALJ did not err in relying on the vocational expert's testimony to find that a limitation to light work with no climbing, occasional balancing, kneeling, crouching, crawling, and stooping, and occasional reaching with the left upper extremity would not preclude performance of the DOT job of demonstrator as customarily performed. [AR 23].

**Analysis of plaintiff's past relevant work**

Plaintiff contends that the ALJ erred in failing to undertake and provide a complete, detailed analysis of the physical and mental demands of plaintiff's past relevant work.

As already noted, information from the DOT or the testimony of a vocational expert may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798. Regardless of which source of job information is used, the ALJ is required to make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-62).

The ALJ complied with his obligation at step four by finding that plaintiff retains the RFC for light work with no climbing, occasional balancing, kneeling, crouching, crawling, and stooping, and occasional reaching with the left upper extremity and has no severe mental impairment, and by relying on the vocational expert's testimony and information in the DOT to find that plaintiff's past job of demonstrator as customarily performed is a light, semiskilled job whose non-exertional physical demands are consistent with plaintiff's RFC. [See AR 22-23]. Although the vocational expert testified that plaintiff performed her particular past job as a demonstrator at a level of exertion ranging from light medium [AR 246], the ALJ permissibly found that plaintiff could perform that job at a light level of exertion, as it customarily is performed in the national economy. In so doing, the ALJ did not "deviate" from the DOT but

in fact relied upon it.[2]

**Treating physicians' opinions**

Plaintiff contends that the ALJ improperly rejected the opinions of treating physician Dr. Luis Perez, a family practitioner, and examining orthopedist Dr. Thomas Grogan.

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of diagnosis; (5) consistency with other evidence in the record; and (6) area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record . Tonapetyan, 242 F.3d at 1148-1149; Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

---

[2] A different scenario would have been presented if, for example, plaintiff's past relevant work as a demonstrator as customarily performed was medium work, and the ALJ deviated from the DOT by finding that plaintiff could perform that job notwithstanding a limitation to light work. That is not what happened here.

   Dr. Perez completed forms certifying to the State of California's Employment Development Department ("EDD") that plaintiff was unable to perform her "regular or customary work" from September 5, 2001 through June 30, 2002 due to anxiety and depression. [AR 175-183]. In February 2002, he added a secondary diagnosis of arthritis and said that plaintiff was unable to use her left shoulder due to severe pain. [AR 175]. Even if those certifications are accepted at face value, they do not demonstrate that plaintiff was unable to engage in substantial gainful activity for a continuous twelve-month period, as required to establish disability under the Social Security Act. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.909; see also Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (stating that a disability claimant bears the burden of establishing that she is disabled for a continuous period of not less than twelve months), cert. denied, 517 U.S. 1122 (1996).

   Furthermore, the ALJ did not err in rejecting Dr. Perez's opinion because it was conclusory and inconsistent with his treatment reports and with the medical evidence as a whole. [AR 20]. See Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by his treatment notes); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")(citation omitted). The EDD responded to one of the disability forms completed by Dr. Perez with a November 2001 request for additional medical information asking, among other things, whether a definite etiology had been established for plaintiff's psychiatric disability(Dr. Perez said "no") and asking for any findings used to identify the etiology (Dr. Perez said "Don't know."). [AR 178]. Dr. Perez estimated that plaintiff would be able to perform her regular or customary work within three to four months, and he replied "none" when asked if there were complications or circumstances which would tend to make plaintiff disabled longer than "normally expected" given her diagnosis. [AR 177].

   The treatment reports from Dr. Perez do not illuminate the basis for his disability opinion. Those reports lack objective or clinical findings, such as the results of mental status

7

examination, to substantiate Dr. Perez's diagnoses of depression or opinion that plaintiff could not perform her customary work due to anxiety or depression. Strangely, plaintiff initially saw Dr. Perez for complaints for complaints of stomach ulcers, a skin rash, and leg and back pain, and her intake history indicated that she presented with no "psychiatric complaints" and was not taking psychiatric medication, and no psychiatric abnormalities were noted, yet Dr. Perez diagnosed anxiety and depression and prescribed Paxil on plaintiff's first visit. [See 171-174]. During some, but not all, subsequent visits, she complained of crying easily and feeling tired and depressed, but the treatment reports do not include any psychiatric signs or test results. Instead, it appears that he relied entirely on her subjective complaints in diagnosing depression and certifying it as a cause of disability. [See AR 163-183]. See 20 C.F.R. §§ 404.1508, 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1528(b)&(c); 416.928(b)&(c) (explaining that psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality, and that laboratory findings include psychological test results). With respect to her physical ailments, Dr. Perez's progress reports reflect that plaintiff had a muscle spasm on one visit [AR 168] but otherwise there are no documented signs or findings (such as joint swelling, range of motion limitation, or x-ray reports) to substantiate the existence of arthritis, particularly at a disabling level of severity. [See AR 163-170]. Under these circumstances, the ALJ was justified in rejecting Dr. Perez's disability opinions.

Dr. Grogan is an orthopedist to whom plaintiff was referred by her representative for an examination and disability evaluation in February 2002 and February 2003. [AR 146-153, 200-203, 253]. In February 2002, plaintiff displayed range of motion limitations and some pain on motion in the lumbar spine and left shoulder. She also had reduced grip strength. An

x-ray showed Grade II spondylolisthesis of the lumbar spine[3] and osteoarthritis of the left shoulder. Her lower extremity range of motion, motor strength, and sensation were intact, and her gait was normal. Dr. Grogan diagnosed osteoarthritis of the left shoulder, grade II spondylolisthesis of the lumbar spine, and severe depression. [AR 147]. Since Dr. Grogan did not conduct any psychiatric examination, the latter diagnosis presumably was made on the basis of plaintiff's subjective history. [AR 146-147].

      In his examination report and on a contemporaneous "musculoskeletal assessment" form, Dr. Grogan opined that plaintiff's condition prevented her from returning to her jobs as an "elderly care worker" and that she was as "permanently disabled." [AR 147, 148-150]. He also completed a physical capacities evaluation form dated February 4, 2002 indicating that plaintiff could perform less than sedentary work. [AR 149-150]. On another form signed the same day, however, Dr. Grogan certified under provisions of the California Unemployment Insurance Code that plaintiff's disability should "end sufficiently to permit the patient to resume regular or customary work" by approximately July 1, 2002 (that is, in about five months). [AR 152].

      In February 2003, Dr. Grogan conducted another examination. Plaintiff complained of pain, especially in the left shoulder and low back. She said she had difficulty lifting at or above the shoulder level with her left arm, and she demonstrated a positive impingement sign in the left shoulder. [AR 203]. She also had limited range of motion in the lumbar spine and pain on "hyperextension" of the lumbar spine. Neurological function of lower extremities was intact and unchanged. Dr. Grogan's diagnoses were chronic impingement syndrome, left shoulder, with early osteoarthritis; grade II spondylolisthesis of the lumbar spine; and atherosclerotic cardiovascular disease. [AR 203]. There was no psychiatric diagnosis. Dr. Grogan wrote that plaintiff "continues to complain of increasing pain and discomfort. In my opinion, she is physically incapable of returning to her work as an elderly care associate in a convalescent

---

[3]   Spondylolisthesis is "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum. <u>Stedman's Medical Dictionary</u> spondylolisthesis (27th ed. 2000).

home." [AR 203]. Dr. Grogan also completed another physical capacities evaluation form indicating that plaintiff could perform less than sedentary work. [AR 202].

On March 31, 2003, Dr. Lloyd Tom conducted an orthopedic examination of plaintiff at the Commissioner's request. [AR 204-212]. Dr. Tom also reviewed medical records, including Dr. Grogan's February 2002 report. [AR 204-205]. Dr. Tom said that the x-rays he conducted "do not substantiate" Dr. Grogan's findings of grade II spondylolisthesis of the lumbar spine. [AR 205]. His physical examination findings were normal except for a limitation in right shoulder abduction.[4] [AR 206]. Dr. Tom's diagnoses were rule out cervical and lumbar radiculopathy and "left frozen shoulder." [AR 208]. In his narrative assessment, he explained that based on

> my findings and x-rays, I find that she has strong evidence of pars defect and this has two meanings. First, there is some tightness in the lumbar spine for a crack to appears (pars defect) to relieve the tightness. This [may be] a favorable spontaneous compensatory process of the spine.
> Her main problem is her left shoulder pain and this [may be] a factor of cervical radiculopathy with addition of painful arch impingement syndrome. She has difficulty with overhead lifting and reaching on the left shoulder. Her functional limitations would be such that she is able to pick and carry load up to 20 lbs occasionally and less than 10 lbs frequently. She has some limitations in the left shoulder in abduction due to almost frozen left shoulder.

[AR 208]. Dr. Tom completed an assessment form to the same effect. [AR 209-212].

Contrary to plaintiff's argument, the fact that Dr. Grogan performed two consultative evaluations (with similar findings) while Dr. Tom performed one does not mean that Dr. Grogan's opinion is entitled to greater weight. Dr. Grogan, like Dr. Tom, is an examining

---

[4] That finding may have been misstated or incorrectly transcribed in Dr. Tom's examination report because his narrative assessment refers only to problems with plaintiff's left shoulder, and he also completed an assessment form in which he said that "abduction is poor in the left shoulder and [plaintiff] may have mild PAIS (painful arc impingement syndrome) on [left]." [AR 210].

physician, as plaintiff's representative admitted during the hearing. [AR 253]. Neither of them qualifies as a treating physician who was "employed to cure," Morgan,169 F.3d at 600, and who is most likely to be "able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In assessing the relative weight of their opinions, the ALJ noted that Dr. Tom submitted radiology reports to support his assertion that x-rays did not substantiate Dr. Grogan's finding of spondylolisthesis, whereas Dr. Grogan did not submit x-ray reports. [AR 20]. That is a permissible basis for giving Dr. Tom's opinion more weight. See 20 C.F.R. 404.1527(d)(3)("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ also noted that Dr. Grogan conducted no psychiatric examination and made no findings to support the diagnosis of severe depression included in his first (but not his second) examination report. [AR 21]. The ALJ further observed that while "the objective clinical findings and observed functional limitations from Dr. Grogan and Dr. Tom are not dissimilar," the extremely limited functional capacity assessed by Dr. Grogan were not supported by the longitudinal objective findings and were inconsistent with the lack of any significant treatment. [AR 20]. As noted above, the progress notes from plaintiff's treating family practitioner, Dr. Perez, document very little clinical support for her allegedly disabling physical and mental problems over the course of several visits. Despite her lack of insurance and financial problems, plaintiff also was able to obtain treatment at Los Angeles County facilities (Harbor-UCLA Medical Center and Wilmington Heath Center) on numerous occasions for gastrointestinal problems and other complaints, but those records do not contain objective evidence of musculoskeletal or neurological abnormalities consistent with Dr. Grogan's highly restrictive assessment. [See AR 99-144]. Furthermore, while Dr. Tom indicated that "stress views of the lumbar spine [may be] in order" and did not rule out cervical and lumbar radiculopathy, that does not make his opinion less credible than Dr. Grogan's. Dr. Tom did not qualify his

functional assessment. Like Dr. Grogan, he relied on physical examination findings and x-rays to support his opinion. He also stated unequivocally that there was no radiographic evidence to support Dr. Grogan's diagnosis of grade II spondylolisthesis of the lumbar spine. Unlike Dr. Grogan, Dr. Tom also had the benefit of reviewing medical records.

For all of the foregoing reasons, the ALJ provided specific, legitimate reasons based on substantial evidence for rejecting the opinions of treating physician Dr. Perez and examining physician Dr. Grogan, and for relying instead on the opinion of the Commissioner's examining physician, Dr. Tom.

**Credibility evaluation**

Plaintiff contends that the ALJ did not articulate legally sufficient reasons for rejecting the alleged severity of her subjective symptoms.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885.

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type,

12

dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997);  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ credited plaintiff's subjective complaints of pain, fatigue, weakness and other symptoms to the extent that she restricted plaintiff to light work with only occasional reaching of the left upper extremity and other postural limitations, but she rejected plaintiff's testimony that her symptoms were so severe she was disabled.  [See AR 19, 22-23, 232-235].  The ALJ observed that plaintiff's subjective symptoms were disproportionate to the objective findings, which essentially consisted of decreased range of motion in the left upper extremity and lumbar spine, muscle spasm, and x-ray findings whose significance was disputed.  Although a lack of objective medical evidence to corroborate the alleged severity of a claimant's subjective symptoms "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681(9th Cir. 2005) (holding that the ALJ permissibly discredited the claimant's allegations of "severe low back pain" where her MRI and x-rays show only mild degenerative disc disease and mild dextroscoliosis without "apparent disc herniation or nerve root impingement").

Next, the ALJ cited the observations of the Commissioner's consultative psychological examiner, Dr. Nora Paculdo. [See AR 22]. Remarking that plaintiff was ambulatory with no

abnormal gait, posture, or mannerisms, no involuntary movements, no observable signs of pain, and a mental status examination that was significant only for an anxious affect, fair concentration, and fair insight, Dr. Paculdo opined that plaintiff "exaggerates her symptoms." [AR 21, 184-186]. See Light, 119 F.3d at 792 (stating that the ALJ may consider a physician's statements regarding the severity of a claimant's symptoms).

The ALJ further noted that plaintiff's subjective complaints and alleged limitations were not consistent with the conservative treatment she received from Dr. Perez, a family doctor who prescribed non-steroidal anti-inflammatory medications and muscle relaxants for plaintiff's musculoskeletal complaints (but no narcotic prescription pain relievers). [See AR 22, 79, 84, 163-174, 236]. See Osenbrock, 240 F.3d at 1166 (holding that the ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"). Plaintiff said Dr. Perez sometimes gave her samples because she could not afford the medication [AR 236, 244], but she acknowledged that Dr. Perez had not suggested she go to a free or low-cost clinic (such as a county facility) for any additional treatment or that she needed to be hospitalized. [AR 236]. The ALJ concluded that Dr. Perez's failure to prescribe, or refer plaintiff for, more aggressive or specialized treatment, and her failure to seek such treatment, undermined her allegations of disabling subjective symptoms. [AR 22, 51, 79, 168]. See Burch, 400 F.3d at 681 (holding that where the claimant "sought some treatment" for her allegedly disabling back pain, but her physicians had not recommended surgery, and the claimant had not undergone physical therapy, chiropractic treatment, or been given home exercises, her limited treatment constituted "powerful evidence" of "the extent to which she was in pain," and the ALJ did not err in concluding that the claimant's pain simply was "not severe enough to motivate her to seek these forms of treatment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged) (citing Bunnell, 947 F.2d at 346).

Plaintiff argues that "her lack of medical treatment was due to her financial situation and

14

lack of insurance, which restricts not only receiving treatment but also can serve to reduce treatment to 'conservative' out of financial necessity." [JS 36]. The ALJ considered plaintiff's testimony about her financial situation but concluded that the record as a whole showed a lack of motivation rather than a lack of access to medical care. The ALJ noted that before she began seeing Dr. Perez, plaintiff had utilized Los Angeles County healthcare facilities (Harbor UCLA Medical Center and Wilmington Health Center) for medical treatment. [AR 19, 99-144, 235-236]. Plaintiff testified that she had not gone to a county facility recently because "they make me wait for a long time, I can't be standing or sitting for too long." [AR 235]. Instead, she saw Dr. Perez "[t]wo times a month sometimes, it also depends on how much we have, on how much it's going to cost me and how much extra money we have for the month. Sometimes he only sends me the medication." [AR 235-236]. Plaintiff testified that Dr. Perez "wants me to get x-rays done but since they're too expensive I haven't gotten them done." [AR 236]. She admitted, however, that she had been able to obtain x-rays of her arm at a county clinic in the past, and that she had paid Dr. Grogan for x-rays in conjunction with his disability evaluations. [AR 22, 236-237]. While plaintiff cannot be faulted for obtaining evidence to support her disability claim, the fact that she paid for x-rays when she needed them for a disability evaluation, and that she previously had obtained x-rays from a county clinic, casts doubt on her assertion that she could not obtain current x-rays because they were too expensive. Plaintiff also said that she had seen a psychiatrist in the past (at Harbor UCLA Medical Center [AR 85]), but she testified that she could not remember the last time she had seen him, and she was not seeing a mental health specialist at the time of the hearing. [AR 240].

Plaintiff contends that "[a] fair reading of the evidence is that plaintiff could not afford all the medical care she needed, she was frustrated with the free- or low-cost clinics she had previously gone to so she kept up treatment with Dr. Perez as much as circumstances allowed, and she went to Dr. Grogan to get enough evidence to prove her claim for social security benefits ...." [JS 36]. That may be one "fair reading" of the evidence, but it is not the only one. The ALJ permissibly inferred that if plaintiff's subjective symptoms were as serious as she alleges, Dr. Perez would have prescribed more aggressive treatment or referred her to a free or

15

low-cost clinic, such as the county facilities she had utilized previously (and that plaintiff would have endured the temporary discomfort of a long wait to obtain relief from her allegedly disabling pain). See Burch, 400 F.3d at 681 (holding that the ALJ did not err in inferring from the claimant's conservative treatment that her pain was not severe enough to motivate her to seek other, more aggressive forms of treatment). Because the ALJ's interpretation of plaintiff's testimony in this regard was reasonable and supported by substantial evidence, it should not be disturbed. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (explaining that if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" that interpretation).

The ALJ also found that plaintiff made inconsistent statements about her past work and her ability to communicate in English. [AR 22]. The ALJ noted that plaintiff gave inconsistent statements to three doctors about her work history. [AR 22]. In February 2002 and again in February 2003, Dr. Grogan reported that plaintiff had worked as an "elderly care worker" and an "elderly care associate in a convalescent home." [AR 146-147, 203]. In June 2002, Dr. Paculdo reported that plaintiff said she last worked in 2000 as a "machine operator." [AR 185]. In March 2003, Dr. Tom reported that plaintiff said she did "manual labor type work in a nursery for 12 years" and "worked in a restaurant for three years making tacos." [AR 204]. In the section of her disability report where plaintiff was asked to list her jobs for the past 15 years, she reported working as "housekeeper/elderly patients," babysitter - of grandson," "sales representative for many years at Jolene," and "sales representative for N.S.A./selling filters [for] water purification systems." [AR 87; see AR 83]. Although it may be unreasonable to expect a patient to provide a detailed job history to her doctor, the ALJ was entitled to consider these rather obvious and unexplained inconsistencies in plaintiff's descriptions of her past work when assessing her overall credibility. See Light, 119 F.3d at 792; Fair, 885 F.2d at 604 n.5.

The ALJ also concluded that plaintiff made inconsistent representations about the extent of her ability to communicate in English. [AR 22]. Plaintiff emigrated from Mexico to the United States in 1967 and had been living in the United States for about 37 years as of the date of the administrative hearing. [See AR 185, 204]. Asked if she could "speak and

understand a simple conversation in English," she replied, "Very little." [AR 228]. Asked if she could read or write a simple message in English, she said "No." [AR 228]. Plaintiff acknowledged that she had taken and passed the United States citizenship test in English, but she said she had done so by "simply memoriz[ing] the right answers," an explanation that the ALJ found inadequate given plaintiff's assertion that she could not read or write any English and could speak or understand only "very simple" English. [AR 227-228]. Cf. Warda v. Apfel, 2000 WL 875412, at *2, *5 (N.D. Ill. 2000)(holding that the record adequately supported the ALJ's credibility finding where, among other things, the ALJ found that there was unresolved inconsistency between the claimant's testimony that he was illiterate in English and his testimony that he had taken a written citizenship examination in English, notwithstanding the claimant's attempt "to explain the written citizenship exam by claiming that his wife taught him the answers to the exam"). Plaintiff's disability report also suggests that she had somewhat greater proficiency in English than she allowed in her testimony. In that report she said that she could speak "some" English and could read and write "limited" English. [AR 77]. Although the evidence regarding plaintiff's ability to communicate in English is inconclusive, the ALJ did not err in concluding that plaintiff's statements about her level of proficiency were somewhat inconsistent and tended to impair her credibility.

The ALJ's reasons for rejecting the alleged severity of plaintiff's subjective complaints are clear and convincing, and they are supported by substantial evidence in the record as a whole.

**No severe mental impairment**

Plaintiff contends that the ALJ erred in finding that she had no severe mental impairment.

An impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(italics in original)(quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3). To determine whether or not an impairment is severe, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical

17

or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).   The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *3.

The ALJ found that plaintiff did not have a severe mental impairment, and that conclusion is supported by substantial evidence. She noted that plaintiff testified that she had seen a mental health professional at some point in the past (plaintiff could not recall when), but she was not doing so at the time of the hearing. [AR 21, 240]. Although Dr. Perez diagnosed depression and anxiety and prescribed medication, the ALJ permissibly rejected those diagnoses because they were in made in apparent reliance on plaintiff's intermittent subjective complaints of feeling depressed and crying easily, without any mental status examination or psychiatric findings. [AR 21]. The ALJ also noted that Dr. Perez did not keep a record of plaintiff's medication compliance, calling into question how Dr. Perez could accurately assess whether the medication he prescribed actually was effective or appropriate. [AR 21].[5]

---

[5] Plaintiff argues that Dr. Perez prescribed psychiatric medications "with the approval of Dr. Rodolfo Garcia, a psychiatrist plaintiff had seen." [JS 37 (citing AR 165)]. One of Dr. Perez's progress notes includes a notation which says "Pt. is seen Dr. Rodolfo Garcia psychiatrist agreed → Paxil ...." [AR 165]. There is also a reference to trazodone and a couple of dates whose significance is unclear. [AR 165].   Though Dr. Perez may have spoken to Dr. Garcia and obtained his input, the ALJ still was entitled to consider the complete absence of any clinical observations or signs of a mental impairment in Dr. Perez's treatment reports. See Connett, 340 F.3d at 874-875 (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician

The ALJ also relied on the reports of the Commissioner's examining and non-examining physicians. [AR 21]. The Commissioner's psychiatric examiner, Dr. Nora Paculdo, took a history and conducted a mental status examination in June 2002. [AR 21, 184-186]. She diagnosed anxiety not otherwise specified and personality disorder not otherwise specified, and she assigned plaintiff a Global Assessment of Functioning ("GAF") score of 70, signifying mild symptoms or a mild functional impairment.[6] Dr. Paculdo opined that plaintiff could do activities independently and appropriately; interact appropriately and communicate effectively with family, friends and neighbors; sustain focused attention; complete an everyday routine; follow and understand simple to complex instructions; and adapt to stresses common to the work environment. [AR 186]. In September 2002, the non-examining state agency physician opined that plaintiff had a non-severe anxiety-related disorder. [AR 28, 187-199].

Dr. Grogan, plaintiff's consultative orthopedist, diagnosed "severe depression" in his first examination report and opined that plaintiff was incapable of performing her past job as en elderly care worker due to her depression and orthopedic problems. [AR 147]. Dr. Grogan made no psychiatric diagnosis in his second report and alluded to no psychiatric problems. [AR 203]. The ALJ permissibly rejected Dr. Grogan's initial psychiatric diagnosis and disability opinion because he was not a mental health specialist, did not conduct any mental status

---

whose restrictive functional assessment was not supported by his treatment notes).

[6] The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. The GAF rating is is in the lower of two decile ranges if either the symptom severity or the level of functioning falls within that range. A GAF score of 61 through 70 denotes some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002); Morgan, 169 F.3d at 598 n.1; Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996), rev'd on other grounds, Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); see also Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

examination, and made no psychiatric findings to support his opinion, which was contradicted by other medical opinions in the record. Thomas, 278 F.3d at 957 (stating that the ALJ may reject a medical opinion that "is brief, conclusory, and inadequately supported by clinical findings").

Substantial evidence supports the ALJ's finding that even with her diagnoses of anxiety and depression, plaintiff had only a slight abnormality that no more than minimally affected her mental ability to perform basic work activities such as understanding, carrying out, and remembering simple instructions and responding appropriately to supervision, co-workers, and usual work situations. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that although step two "requires a 'de minimis' showing of impairment," a claimant "must show more than the mere presence of a condition or ailment") (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed. IT IS SO ORDERED.**

DATED:   September 20, 2005

                                                    /s/
                                      ANDREW J. WISTRICH
                                      United States Magistrate Judge